**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: JKJ CHEVROLET,
INCORPORATED,

*Debtor.*

RICHARD G. HALL, Trustee,
                *Plaintiff-Appellant,*

and

FORD MOTOR CREDIT COMPANY,
                *Plaintiff,*

v.

CHRYSLER CREDIT CORPORATION,
                *Defendant-Appellee.*

No. 04-2374

RICHARD G. HALL, Trustee,
                *Plaintiff-Appellant,*

v.

CHRYSLER CREDIT CORPORATION,
                *Defendant-Appellee.*

No. 04-2458

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-03-1501; CA-03-1502; CA-04-93; BK-91-14535; AP-94-1321)

Argued: May 27, 2005

Decided: June 22, 2005

Before LUTTIG, MICHAEL, and TRAXLER, Circuit Judges.

Vacated and remanded by published opinion. Judge Luttig wrote the opinion, in which Judge Michael and Judge Traxler joined.

---

**COUNSEL**

**ARGUED:** George Richard Pitts, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellant. Joel S. Aronson, RIDBERG, SHERBILL & ARONSON, L.L.P., Bethesda, Maryland, for Appellee. **ON BRIEF:** Janet R. Fallon, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellant. Theodore R. Goldstock, Jennifer B. Wellman, RIDBERG, SHERBILL & ARONSON, L.L.P., Bethesda, Maryland, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

In 1991, a number of car dealerships owned and controlled by John W. Koons, Jr., filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code. J.A. 561. The consolidated proceedings were subsequently converted to a Chapter 7 case with Richard Hall serving as trustee. *Id.*[1] Hall commenced an adversary proceeding against Chrysler Credit to recover alleged "preference payments" made to Chrysler Credit by three of the debtor-dealerships, Koons Chrysler Plymouth, Inc. ("Koons"), Brandnewco, Inc., and JKJ Chrysler Plymouth, Inc. ("JKJ CP"), prior to the filing of those dealerships' Chapter 11 petitions. *Id.* The bankruptcy court held that the trustee was entitled to recover the payments from JKJ CP but not from Koons or Brandnewco. The district court affirmed the bankruptcy court's judgment as to the Koons and the Brandnewco payments. The district court initially decided to remand the dispute pertaining to the JKJ CP payments, but ultimately certified that issue for interlocutory appeal. For

---

[1]In April 2000, the Bankruptcy Court approved an agreement assigning to Ford Motor Credit Company the responsibilities for prosecuting the claims at issue in this appeal.

the reasons set forth below, we vacate the judgment of the district court as to the Koons and Brandnewco payments, and we remand the entire case for further proceedings consistent with this opinion.

I.

The disputed payments in the instant case arose from a "floor plan" financing arrangement between Chrysler Credit and the debtor-dealerships. As the bankruptcy court explained, the Chrysler Credit floor plan agreement operated in the following way:

> 1) As vehicles were shipped to the dealerships, Chrysler [Credit] paid the manufacturer for them and added the cost of those vehicles to the dealerships' line of credit. 2) The purchased vehicles became additional collateral. Interest accrued on each vehicle until Chrysler was repaid the principal. 3) Repayment was due five days after a vehicle was sold, and a dealership received purchase funds. . . . 4) A dealership could continue to add vehicles to its inventory as long as it did not reach the maximum amount of its loan and was not in default. 5) As Chrysler received payment for each vehicle the loan amount was reduced, which made room for additional inventory. Under this arrangement, the collateral security and the loan balance were constantly moving up and down as vehicles were added to inventory and sold.

J.A. 436.

In the ninety days preceding the Koons and Brandnewco bankruptcies, Chrysler Credit was paid $6,462,585.70 by those dealerships pursuant to the floor plan financing agreement. J.A. 437. The trustee sought to avoid those payments under 11 U.S.C. § 547(b), which provides as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property
>
> (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made —

    (A) on or within 90 days before the date of the filing of the petition;

*****

(5) *that enables such creditor to receive more than such creditor would receive if —*

    (A) the case were a case under chapter 7 of this title;

    (B) *the transfer had not been made*; and

    (C) *such creditor received payment of such debt to the extent provided by the provisions of this title.*

11 U.S.C. § 547(b) (emphasis added). Section 547(g) provides that "the trustee has the burden of proving the avoidability of a transfer under subsection (b)." The parties agreed that the payments in question satisfied the first four elements of section 547(b), confining their dispute to whether the trustee had established that the payments satisfied the requirements of (b)(5). J.A. 442.

Chrysler Credit maintained that the disputed payments did not exceed what it would have received in a Chapter 7 proceeding because the funds that formed the basis of those payments were proceeds from the sale of vehicles and, as such, under Virginia law adopting the Uniform Commercial Code, Chrysler Credit acquired a security interest in those proceeds. *See* Va. Code Ann. § 8.9-306(2) (repealed 2001) ("a security interest . . . continues in any identifiable proceeds" from the sale of collateral).[2] Under Chrysler Credit's view,

---

[2]Because the transactions and bankruptcy proccedings at issue in this case occurred prior to 2001, we consult Virginia's codification of the former version of Article 9 of the Uniform Commercial Code.

if the disputed payments had not been made, it would have retained that security interest and received priority in that amount in any Chapter 7 proceeding.[3] In other words, according to Chrysler Credit, its security interest at the time of the preference payments was the same as it would have been in a Chapter 7 proceeding and thus the amount of the preference payments did not exceed what it would have received in a Chapter 7 proceeding.

The trustee, on the other hand, maintained that Chrysler received more from the preference payments than it would have for its undersecured claims in a Chapter 7 proceeding. The trustee alleged that the payments to Chrysler Credit came from bank accounts where the proceeds from vehicle sales had been commingled with other funds and that, as such, under Virginia law, Chrysler Credit could not establish a perfected security interest in the funds unless it could "trace" the payments it received from Koons and Brandnewco to the proceeds from the sale of the vehicles. *See* Va. Code Ann. § 8.9-306(2) (repealed 2001) ("a security interest . . . continues in any *identifiable* proceeds") (emphasis added). Under this theory, because Chrysler Credit could not establish that it did, in fact, have a perfected security interest in the commingled funds, Chrysler Credit would have received far less in a Chapter 7 proceeding than it received from the pre-petition payments.

The bankruptcy court determined that the proceeds had been commingled, J.A. 490, and that Chrysler Credit would normally bear the

---

[3]Notably, the bankruptcy court found that "Chrysler was undersecured as to each company both at the beginning of the 90 day preference period and on the date the Chapter 11 petitions were filed." J.A. 489. If Chrysler Credit had been fully secured during those time periods then it would be impossible for the trustee to establish that Chrysler Credit received more from the preference payments than it would in a Chapter 7 proceeding. However, because Chrysler Credit was undersecured at all relevant times, the trustee may prevail by establishing that the amount of the preference payments to Chrysler Credit exceeded the amount of Chrysler Credit's security interest at the time of a Chapter 7 proceeding. Chrysler Credit's recovery in a Chapter 7 proceeding would likely be limited to the amount of its security interest because the estate was administratively insolvent, and thus Chrysler Credit could only recover collateral (or the proceeds therefrom) retained by the estate.

burden of "tracing" to establish a perfected security interest in the commingled proceeds under the UCC and other state law, J.A. 493. The bankruptcy court concluded, however, that section 547(g) supplanted the state law burden of proof, expressly placing it on the trustee, and that the trustee had failed to satisfy that burden because he could not establish that the funds that formed the basis of the preference payments were not proceeds from the sale of collateral. J.A. 497. Because the trustee could not disprove the existence of Chrysler Credit's security interest, he could not establish that Chrysler Credit would have received less in a Chapter 7 proceeding. *Id*. The district court affirmed the bankruptcy court's judgment. J.A. 552-53 ("Tracing is a method for the Trustee to carry its burden; by tracing the funds, the Trustee may show that the transfers did not come from the secured creditor's collateral in the commingled account. The bankruptcy court correctly held that the trustee failed" to carry this burden.).

The parties and the lower courts are correct that section 547(b) calls for a comparison between the amount that Chrysler Credit received in alleged preference payments and the perfected security interest that it would have enjoyed in a Chapter 7 proceeding. *See Hager* v. *Gibson*, 109 F.3d 201, 210 (4th Cir. 1997) ("Section 547(b) . . . protects only those creditors, secure or unsecured, who can establish that they received no more by the payment than they would have received as claimants in a Chapter 7 liquidation."). The parties and lower courts are also correct that state law determines the extent of the perfected security interest that Chrysler Credit would enjoy in a Chapter 7 proceeding. *See Butner* v. *United States*, 440 U.S. 48, 55 (1979) (holding that "[u]nless some federal interest requires a different result," "property interests [in bankruptcy proceedings] are created and defined by state law."); *In Re: The Wallace & Gale Co.*, 385 F.3d 820, 830 (4th Cir. 2004). But both the parties and lower courts are incorrect in asserting that the "tracing" principles that would have determined Chrysler Credit's perfected security interest *at the time of the preference payments* are relevant to the trustee's claims. Section 547(b)(5) is not concerned with whether the preference payments can be traced to the proceeds of collateral; rather that section calls for a comparison of the *amount* of the preference payments to the *amount* the creditor would receive in a hypothetical Chapter 7 proceeding. And, more importantly, a secured creditor's perfected security interest

in commingled proceeds is *calculated differently in an insolvency proceeding*, such as a case under Chapter 7, *than it is before the instigation of insolvency proceedings*, such as at the time of the preference payments. Thus, the amount Chrysler Credit would have received in a Chapter 7 proceeding cannot be determined by reference to any security interest Chrysler Credit might have enjoyed at the time of the preference payments.

  In a Chapter 7 proceeding, hypothetical or otherwise, the determination of Chrysler Credit's security interest in proceeds from the sale of collateral would have been determined by Va. Code Ann. § 8.9-306(4) (repealed 2001), which provided as follows:

> *In the event of insolvency proceedings* instituted by or against a debtor, *a secured party with a perfected security interest in proceeds has a perfected interest only in the following proceeds*:
>
> (a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;
>
> (b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;
>
> (c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and
>
> *(d) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph* (d) is
>
>> (i) subject to any right to set-off; and
>>
>> (ii) *limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the*

*sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).*

Va. Code Ann. § 8.9-306(4) (repealed 2001) (emphasis added); *see also In Re Bumper Sales, Inc.*, 907 F.2d 1430, 1438 (4th Cir. 1990) (holding that section 9-306(4) "governs the extent of a creditor's interest in commingled proceeds only up to and including the instant of commencement of the insolvency proceedings" and thus "specifically deals with the cases in which funds are commingled prior to filing bankruptcy"). Because the bankruptcy court found that the trustee established that the debtor-dealerships commingled the proceeds of their vehicle sales with other funds, subsections (a) through (c) are inapplicable. *See* J.A. 497 ("[D]ebtors had other funds in their operating accounts"); *id.* at 490 ("Chrysler's factual argument that the payments could only have come from its collateral proceeds is not supported in the record."). Accordingly, the extent of Chrysler Credit's security interest in a Chapter 7 proceeding in the funds commingled by the debtor-dealerships would have been exclusively determined by applying the formula set forth in section 8.9-306(4)(d), a formula that does not depend on *identifying* or *tracing* the proceeds of collateral. *See Harley-Davidson Motor Co. Inc.* v. *Bank of New England-Old Colony*, 897 F.2d 611, 621 (1st Cir. 1990) (Breyer, J.,) ("The provision's [9-306(4)] objective is to provide rules for dividing the funds in a debtor's commingled bank account that are more definite, more readily usable, than the common law tracing rules that, say, a bankruptcy court might otherwise try to apply."); *Maxl Sales Co.* v. *Critiques, Inc.*, 796 F.2d 1293, 1300 (10th Cir. 1986) ("While the Code [UCC] has not eliminated common law tracing principles in situations not involving insolvency, we conclude that the specific provisions of [9-306(4)] . . . provide[ ] new rules for insolvency proceedings. . . . The drafters of the Code apparently believed that these hard and fast rules of identification were preferable to the imprecise and time consuming tracing theories.").[4] Rather, section

---

[4]The bankruptcy court did not attempt to apply the formula set forth in section 8.9-306(4)(d). It did, however, reference 8.9-306(4), noting

8.9-306(4)(d) merely requires a determination of the amount of cash proceeds received by the dealerships in the ten days preceding the filing of the Chapter 11 petitions minus any payments to Chrysler Credit "on account of" those proceeds during that time period. *Id.*[5]

As this comparison has never been performed, we vacate the judgment of the district court on this issue and remand the case so that the trustee may have an opportunity, consistent with his burden under section 547(g), to establish that Chrysler Credit received more from the pre-petition payments than it would have received in a Chapter 7 proceeding.

## II.

As with Koons and Brandnewco, Chrysler Credit entered into a floor plan financing agreement with JKJ CP. In the ninety days preceding the JKJ CP bankruptcy, Chrysler Credit received $2,109,274.26 from JKJ CP. J.A. 243. Because Chrysler Credit failed to perfect its security interest pertaining to its financing arrangement with JKJ CP, J.A. 532, it conceded that the disputed payments were

---

that that provision, notwithstanding the burden shift imposed by section 547(g), "puts the burden on the creditor to identify the *source* of the proceeds." J.A. 493 (emphasis added). While this observation is correct, it is not at issue here because the trustee has conceded that the *source* of some of the proceeds deposited into the debtor-dealerships' accounts was from the sale of collateral. And, because the trustee has established that those proceeds were *commingled* with other funds, the formula set forth in 8.9-306(d), which does not require the identification of collateral proceeds, sets forth the exclusive test for determining Chrysler Credit's perfected security interest in a Chapter 7 proceeding.

[5]Appellant, counter to its own self-interest, maintains that section "9-306(4) . . . is not applicable because the transfers at issue in this case took place before the bankruptcy filings of KCP and Brandnewco." *Appellant's Br.* at 20 n.10. But, as explained above, the transfers that constituted the preference payments are only relevant insofar as they establish an amount to be compared to a hypothetical Chapter 7 proceeding, a proceeding where Chrysler Credit's security interest in commingled proceeds would have been determined pursuant to section 8.9-306(4)(d).

preferential as defined in section 547(b). Chrysler Credit maintained, however, that it was not obligated to return those payments because, subsequent to those payments, it continued to extend credit to JKJ CP. Chrysler contended that its subsequent extension of credit entitled it to the subsequent new value defense enumerated in section 547(c)(4), which provides as follows:

> The trustee may not avoid under this section a transfer . . . (4) to or for the benefit of a creditor, *to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor* — (A) not secured by an otherwise unavoidable security interest; *and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.*

11 U.S.C. § 547(c)(4) (emphasis added). The bankruptcy court found that Chrysler Credit was not entitled to the defense because JKJ CP paid Chrysler Credit for its subsequent extensions of credit; in other words, it held that all of the new value was repaid by the debtor, thereby depriving Chrysler Credit of its section 547(c)(4) defense. J.A. 245 ("[T]he § 547(c)(4) defense is not available to a creditor that has received payment for the advances it contends represent subsequent new value."). In the view of the bankruptcy court and the trustee, subsequent new value must remain unpaid in order for a creditor to take advantage of the 547(c)(4) defense. *See Kroh Brothers Development Co.* v. *Continental Construction Engineers, Inc.*, 930 F.2d 648 (8th Cir. 1991) ("The debtor who makes a preferential transfer to a creditor who subsequently advances new value . . . has not depleted the bankruptcy estate to the disadvantage of other creditors. . . . *But when a debtor pays for new value . . . there is in effect no return of the preference*.") (emphasis added).

The district court rejected the bankruptcy court's interpretation of section 547(c)(4). It determined that "the requirement that the new value remain unpaid is inaccurate and confusing paraphrase" and that "the proper inquiry is whether the new value has been paid for *by an 'otherwise unavoidable transfer*.'" J.A. 543 (emphasis added). While the district court initially indicated it would remand the case for a determination of "whether JKJ CP made otherwise unavoidable transfers to Chrysler Credit," J.A. 546, it ultimately certified the dispute

pertaining to the proper interpretation of section 547(c)(4) for interlocutory appeal. J.A. 572.

The district court's initial interpretation of the statute was correct. A creditor is entitled to offset preference payments through the extension of new value to the debtor so long as the debtor does not make *an otherwise unavoidable transfer* on account of the new value. Thus, even if JKJ CP repaid all of the new value, under the plain terms of the statute whether those payments deprive Chrysler Credit of its new value defense depends on whether the payments were *otherwise unavoidable*. Appellant appears to concede that the trustee could have — but did not seek to — avoided these payments during the bankruptcy proceedings. *Appellant's Br.* at 34. Notwithstanding this concession, appellant nevertheless maintains that because the trustee did not in fact seek to avoid the payments *and* because the time has passed for such a challenge, that the payments are "otherwise unavoidable." *Id.*; *Appellant's Reply Br.* at 11 ("If a payment, once avoidable, becomes unavoidable, then the new value should no longer be eligible for the defense."). Appellant contends that a contrary conclusion would frustrate the purpose of the statute by permitting Chrysler Credit *both* to offset the preference payments in the amount of the new value *and* to keep subsequent payments made on account of that new value.

Appellant's position is not supported by the statute. The trustee's failure to avoid JKJ CP's post-new value payments to Chrysler Credit does not convert those payments from avoidable to unavoidable transfers. Indeed, the plain and ordinary meaning of an "avoidable" transfer is a transfer "that *can* be avoided." *See Webster's Third New International Dictionary* 151 (1987) (emphasis added). Because the trustee *could have* avoided the transfers, those transfers were not "otherwise unavoidable," and thus have no bearing on Chrysler Credit's new value defense. And, even though such a result may frustrate the intended operation of section 547(c)(4), such is only the case because of the trustee's failure to recover the avoidable post-new value payments.

Having determined that the district court's initial reading of the statute was correct, we remand this portion of the case so that the bankruptcy court, consistent with this opinion, may determine

whether any of the repayments were "otherwise unavoidable transfers." While it appears that they were not, the bankruptcy court is in the best position to apply the foregoing interpretation of section 547(c)(4) to each individual transfer. Indeed, some of the challenged transfers occurred after JKJ CP filed for bankruptcy and these transfers may in fact be "otherwise unavoidable." *See* J.A. 245 ("[S]ome of these repayments may have occurred postpetition. . .").[6]

## CONCLUSION

The judgment of the district court as to the Koons and Brandnewco payments is vacated and the entire case remanded for further proceedings.

*VACATED AND REMANDED*

---

[6]While post-petition transfers may be considered under section 547(c)(4)(B), *see In re Login Bros. Book Co., Inc.*, 294 B.R. 297, 300 (N.D. Ill. 2003) ("[B]oth the plain language and the policy behind the statute indicate that the timing of a repayment of new value is irrelevant"), neither party has addressed whether the post-petition transfers that occurred in the instant case were unavoidable.