**In re CIRCUIT CITY STORES, INC., et al., Debtors.**

No. 08–35653.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 6, 2010.

Order Denying Reconsideration Filed Feb. 23, 2010.

Daniel F. Blanks, Douglas M. Foley, McGuirewoods LLP, Norfolk, VA, Dion W. Hayes, Joseph S. Sheerin, Sarah Beckett Boehm, McGuirewoods LLP, Richmond, VA, Gregg M. Galardi, Ian S. Fredericks, Skadden Arps Slate Meagher & Flom LLP, Wilmington, DE, for Circuit City Stores, Inc.

Robert B. Van Arsdale, Office of the U.S. Trustee, Richmond, VA, for U.S. Trustee W. Clarkson McDow, Jr.

Alan J. Kornfeld, Brad R. Godshall, Jeffrey N. Pomerantz, Pachulski Stang Ziehl & Jones, LLP, Los Angeles, CA, John M. Brom, Querrey & Harrow Ltd., John D. Fiero, Pachulski Stang Ziehl & Jones LLP, San Francisco, CA, Lynn L. Tavenner, Paula S. Beran, Tavenner & Beran, PLC, Richmond, VA, Robert J. Feinstein, Pachulski Stang Ziehl & Jones LLP, New York, NY, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

KEVIN R. HUENNEKENS, Bankruptcy Judge.

The issue now before the Court in this Chapter 11 case is whether the Debtors may use § 502(d) of the Bankruptcy Code to temporarily disallow certain

§ 503(b)(9)[1] claims filed by a number of their creditors (the "Claimants"). The Debtors seek to have the claims filed by the Claimants temporarily disallowed up to the amount potentially recoverable on account of preferential transfers allegedly avoidable under § 547 (the "Preferential Transfers"). Hearing was conducted on November 12, 2009 (the "Hearing") to consider Debtors' request for ruling on the threshold issue of whether § 502(d) can be used to temporarily disallow § 503(b)(9) claims.

## Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores. As of March, 8, 2009, the going out of business sales had been completed. On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan"). The disclosure statement was approved by order entered September 24, 2009. The confirmation hearing is currently scheduled for January 28, 2010.

On October 13, 2009, the Debtors filed two omnibus objections (the "Objections")[3]

---

1. Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., Inter-TAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, May-land MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

3. The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount under § 507 of the Bankruptcy Code.

to certain of the Claimants' claims that asserted a § 503(b)(9) administrative priority (the "Claims") on the grounds that those Claims should be temporarily disallowed under § 502(d) up to the amount potentially recoverable in an avoidance action under § 547 until the return of any Preferential Transfers.[4] A large number of Claimants filed responses[5] (the "Re-

**4.** *See* Debtors' (I) Fifty–First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5214]; Debtors' (I) Fifty–Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5216].

**5.** *See Response of Namsung America Inc. to Debtors' Fifty–First Omnibus Objection to Claims* [Docket No. 5411]; PNY Technologies, Inc.'s Response to Debtors Fifty–First Omnibus Objection to Claims [Docket No. 5416]; Response of Onkyo USA Corporation in Opposition to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5447]; Mitsubishi Digital Electronics America, Inc.'s Response to Debtor's Fifty–First Omnibus Objection to Claims [Docket No. 5454]; Response of Digital Innovations, LLC on Behalf of VonWin Capital Management, LP to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5470]; Response of Longacre Opportunity Fund, L.P. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5472]; Envision Peripherals, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5475]; Response and Joinder of JVC Americas Corp. and JVC Company of America to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5479]; Response of Olympus Corporation and Olympus Imaging America, Inc. to Debtors' (I) Fifty–First Omnibus Objection to Claims [Docket No. 5529]; Response of Hauppage Computer Works, Inc. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5530]; Response of United States Debt Recovery, LLC to Debtor's Fifty–First Omnibus Objection to Claims [Docket No. 5535]; Response and Objection of Midland Radio Corporation to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5537]; Response and Objection of Bethesda Softworks LLC to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5539]; Response of TeleDynamics LLP in Opposition to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5610]; Metra Electronics Corporation's Opposition to Debtor's Fifty–First Omnibus Objection to Claims [Docket No. 5487]; Response of Sima Products Corp. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5491]; Joint Response of THQ, Inc. and Apex Digital, Inc. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5497]; Tamrac, Inc.'s Opposition to Debtor's Fifty–First Omnibus Objection [Docket No. 5498]; Response of Nyko Technologies, Inc. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5499]; Response of SouthPeak Interactive, LLC to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5502]; Bush Industries Inc.'s Response and Joinder Regarding Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5505]; Joinder of Vonage Marketing LLC to the Responses Filed by SouthPeak Interactive, LLC and Nyko Technologies, Inc to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5506]; Omnibus Response of VonWin Capital Management, L.P. to Debtors' Forty–Eighth, Forty–Ninth, Fiftieth and Fifty–First Omnibus Objections [Docket No. 5509]; Response in Opposition of BISSELL Homecare, Inc. to Debtors' Fifty–First Omnibus Objection to Claims [Docket No. 5511]; Cokem International, Inc.'s Response to the Debtor's Fifty–First Omnibus Objection [Docket No. 5515]; Response of Paramount Home Entertainment Inc. to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5434]; Response of SanDisk Corporation to Debtors' (I) Fifty–Second Omnibus Objection to Claims [Docket No. 5449]; Pioneer Electronics' Response to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5464]; LG Electronics USA, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5489]; Response of Toshiba America Consumer Products, L.L.C. to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5495]; Response of Samsung Electronics America, Inc. to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5496]; Samsung Electronics America, Inc.'s Memorandum of Law

sponses"), and on November 10, 2009, the Debtors filed two reply briefs.[6]

In their Objections and at the Hearing, the Debtors requested a determination of the threshold legal issue of whether § 502(d) can be applied as a matter of law to temporarily disallow § 503(b)(9) claims in the amount potentially recoverable as a preferential transfer under § 547. Several of Claimants' Responses took issue with proceeding in this manner. They objected to the Hearing, arguing that it was improper to consider the threshold legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim in a contested matter as part of the claims resolution process separate from any underlying adversary proceeding to determine whether a Preferential Transfer was recoverable in the first instance. The Claimants based their objection to the bifurcation of these issues an on essentially three grounds: (1) bifurcation deprived them of their constitutional due process rights, (2) the Debtors were requesting an advisory opinion, and (3) the Debtors should be required to file an adversary proceeding in order to raise the legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim.

 Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures ... it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1014 (4th Cir.1986) (internal citations omitted). In this case, parties were given ample notice that the threshold legal issue regarding whether § 502(d) could be applied to temporarily disallow a § 503(b)(9) claim would be the topic of the first hearing on the two omnibus Objections. Based on the quantity and the quality of the briefs submitted to this Court (including amicus briefs) and the thorough oral arguments made at the Hearing, the parties have certainly exercised their opportunity to be heard. Further, the Debtors are not requesting an ultimate judicial determination concerning the allowance of these Claims. Rather, they are seeking to postpone payment of the Claims by disallowing them temporarily until the underlying issues can be fully adjudicated in separate adversary proceedings.[7] To this end, Debtors are requesting a ruling on a threshold legal issue common to all of the Claimants. Each of the Claimants will have an opportunity to have an adjudication made in the

in Opposition to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5500]; Twentieth Century Fox Home Entertainment LLC's Response in Opposition to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5504]; Response of Take Two Interactive Software, Inc. to Debtors' Fifty–Second Omnibus Objection to Claims [Docket No. 5583].

6. *See* Debtors' Omnibus Reply in Support of (I) Fifty–First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No.

5621]; Debtors' Omnibus Reply in Support of (I) Fifty–Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5622].

7. If the Claims are not temporarily disallowed, the Debtors will be required to pay to Claimants cash equal to the amount of their Claims on the effective date of the Plan once it is confirmed, *See* 11 U.S.C. § 1129(a)(9); and, thereby, the bankruptcy estates may forfeit any right they may have to contest the underlying dispute.

context of a full blown adversary proceeding regarding any liability they might have for the alleged Preferential Transfers. Therefore, the Claimants' due process rights are not being infringed. Rather, the due process rights of the bankruptcy estates are being preserved.

 The Court is not rendering an advisory opinion. Very real disputes exist between the parties concerning the threshold legal issue. The Court is not asked to issue an advisory opinion when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The Court is merely making a partial ruling in an interlocutory fashion on a very real controversy, and it is reserving the adjudication regarding the underlying liability for any alleged Preferential Transfers for a later determination to be made in the context of an adversary proceeding.

 Finally, the Debtors do not need to file an adversary proceeding in order to have this threshold legal issue resolved. The Debtors are asserting a defense within the claim resolution process. They do not seek affirmative relief. Therefore, Bankruptcy Rule 7001 is not implicated and an adversary proceeding is not necessary at this time.

Pursuant to Bankruptcy Rule 3007 a claim objection need not be made in an adversary proceeding.[8] When a response is filed to an objection, the claim objection becomes a contested matter governed by Bankruptcy Rule 9014. *See In re Fleming*, 2008 WL 4736269, at *1 (Bankr. E.D.Va. Oct.15, 2008) ("The hearing on the claim objection is treated as a contested matter, and Fed. R. Bankr.P. 9014 applies."). As such, certain rules, under part VII of the Federal Rules of Bankruptcy Procedure are applicable, including Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"). *See id.; see also* Fed. R. Bankr.P. 7056.[9]

Bifurcating the Hearing between a common threshold legal issue that pertains to all the Claims Objections and reserving for later determination the underlying issues unique to each of the adversary proceedings will create efficiencies in resolving the Claims Objections as well as greater opportunity for all interested parties to participate and be heard. When Claimants were questioned during the Hearing as to how they would propose to go forward if the Hearing was not bifurcated, they suggested that the alternative would be to go forward individually on a claim by claim basis in connection with the separate adversary proceedings. This suggested alternative would take significantly more time and would be potentially detrimental

---

8. Rule 3007(b) of the Federal Rules of Bankruptcy Procedure states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." The Debtors are not seeking relief of the kind specified in Rule 7001. Rather, they are asserting an affirmative defense to the claims.

9. Under Civil Rule 56, a party may request partial summary judgment. *See* Fed.R.Civ.P. 56(a), (b) (providing that any party "may move, with or without supporting affidavits, for summary judgment on all or part claim."). Here, the Debtors have, in essence, requested partial summary judgment on a particular legal issue for which no genuine issue of material fact is in dispute. Thus, the Debtors' request to bifurcate the hearings is proper under the applicable Rules of Bankruptcy Procedure.

to parties given later trial dates. Given the efficiencies created by this method and the greater opportunity of all Claimants to participate and be heard on the common legal issue, it is not surprising that many other bankruptcy courts have proceeded in a similar fashion—first addressing common threshold legal issues before resolving separate underlying liability issues. *See, e.g., In re Leeds Bldg. Prods., Inc.,* 141 B.R. 265, 266 (Bankr.N.D.Ga.1992); *In re Plastech Engineered Prods., Inc.,* 394 B.R. 147, 149 (Bankr.E.D.Mich.2008); *In re Hackney,* 351 B.R. 179, 181 (Bankr. N.D.Ala.2006); *In re Dawson,* 346 B.R. 503, 507 (Bankr.N.D.Cal.2006); *In re Hicks,* 300 B.R. 372, 375 (Bankr.D.Idaho 2003). Accordingly, the Court agreed to hear arguments relating to the one legal issue regarding the application of § 502(d) to temporarily disallow the Claims filed by the Claimants pending an adjudication of any underlying liability for the alleged Preferential Transfers in the context of separate adversary proceedings.

### Analysis

■ The question before the Court is whether § 502(d) may be used to bar § 503(b)(9) administrative expense claims. Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Section 502(d) provides that "[n]otwithstanding subsections (a) and (b) of [section 502], the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553, of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this

title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d). Debtors contend that the Claimants are transferees of Preferential Transfers avoidable under § 547. From a plain reading of § 502(d), it would appear that if a Claimant's request for payment of an administrative expense arising under § 503(b)(9) is a "claim" under the Bankruptcy Code, then § 502(d) may be used to disallow it.

■ The word "claim" is defined in § 101(5)(A) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A). It is generally accepted that "Congress chose expansive language," in defining the term "claim," and therefore the definition of "claim" should be broadly construed and applied. *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Administrative expenses appear to be a subset of "claims." Throughout the Bankruptcy Code, the term "claim" is used to refer to administrative expenses. For example, under § 1123(a), "a plan shall (1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2)." 11 U.S.C. § 1123(a)(1). Section 507(a)(2) specifically refers to "administrative expenses allowed under section 503(b) of this title...." 11 U.S.C. § 507(a)(2). So, the kind of "claims" specified in § 507(a)(2) to which § 1123(a) refers are administrative expenses.[10] Further, § 503(b) itself uses the terms "claims" and "expenses" inter-

---

**10.** Similarly § 1129(a)(9)(A) refers to *claims* of a kind specified in section 507(a)(2).

changeably: "[a]fter notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title...." 11 U.S.C. § 503(b). If Congress had intended that these terms be mutually exclusive, there would be no need to carve out "claims" allowed under § 502(f). *See, e.g., F.C.C. v. NextWave Personal Communications, Inc.,* 537 U.S. 293, 302, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003) (holding that a reading that renders parts of the Bankruptcy Code "superfluous ... means, of course, that such a reading must be rejected.").

When a "statute's language is plain ... the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). From a plain reading of the text of § 502(d), it appears that § 502(d) can be invoked to disallow a claim for an administrative expense under § 503(b). Nonetheless, the Claimants argue in their Responses that §§ 502(d) and 503(b) should be read separate and apart from one another, where § 502(d) may only be used to disallow claims filed under § 501 and not claims filed under § 503(b). The Respondents rely heavily on the logic of *In re Ames Dep't Stores, Inc.,* 582 F.3d 422, 430 (2d Cir.2009) ("Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled 'Allowance of administrative expenses.' The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects.... Thus, with respect to the allowance of claims, sections 502 and 503 are separate and independent.").

Courts are split on the issue of whether or not § 502(d) can be read to apply to claims for administrative expense. The majority of courts have held that § 502(d) is generally not applicable to § 503(b) claims. *See, e.g., In re Ames,* 582 F.3d at 430–32 (holding that § 502(d) does not apply to administrative expenses under § 503(b)); *In re TI Acquisition, LLC,* 410 B.R. 742 (Bankr.N.D.Ga.2009); *In re Plastech Engineered Prods., Inc.,* 394 B.R. 147, 161 (Bankr.E.D.Mich.2008) (holding that § 502(d) may not be used to bar claims under § 503(b)(9)); *In re Roberds, Inc.,* 315 B.R. 443, 476 (Bankr.S.D.Ohio 2004); *In re Lids Corp.,* 260 B.R. 680, 683–4 (Bankr.D.Del.2001); *In re CM Holdings, Inc.,* 264 B.R. 141, 158 (Bankr.D.Del.2000) (holding that § 502(d) was not applicable to a postpetition administrative expense claim). A minority of courts have adopted the contrary position and read the definition of "claim" in § 101(5) as broad enough to cover administrative expenses. *See, e.g., In re MicroAge, Inc.,* 291 B.R. 503, 513–4 (9th Cir. BAP 2002); *In re Georgia Steel, Inc.,* 38 B.R. 829, 839–40 (Bankr. M.D.Ga.1984).

The majority approach is more consistent with established Fourth Circuit precedent. In *Durham v. SMI Industries,*[11] the Fourth Circuit Court of Appeals stated that "Section 502(d) provides, in pertinent part, that 'the court shall disallow any claim of any entity from which property is recoverable under section ... 550, unless such entity ... has paid the amount ... for which such entity or transferee is liable.' Since a court can only disallow a claim after one has been filed under 11 U.S.C.A. 501(a), 'claim' in section 502(d) includes only one for which a proof has been filed." *Durham v. SMI Industries,* 882 F.2d 881, 882–83 (4th Cir.1989). Therefore, despite the expansive language used in § 101(5)(A) that defines the term "claim" and despite the apparent plain

---

**11.** *Durham v. SMI Industries,* 882 F.2d 881 (4th Cir.1989).

meaning of § 502(d) that applies that defined term, the law in this Circuit is that § 502(d) can only be used to bar "claims" where the "claims" are filed under § 501(a). This application of the law is entirely in keeping with the recent holding of the Second Circuit in *In re Ames.*[12]

The Debtors argue that the instant case can be distinguished from *In re Ames* and *Durham v. SMI Industries* because this case involves § 503(b)(9) claims, which arise prepetition, rather than general § 503(b) administrative expenses, most of which arise postpetition. Notably, the Debtors argue that even if the courts in *Ames* and *Durham* are correct that § 502(d) can only be used to disallow claims filed under 501(a) of the Bankruptcy Code, § 503(b)(9) claims, unlike other § 503(b) administrative expenses, *must* be filed under § 501(a) of the Bankruptcy Code.

Bankruptcy Rule 3002(a) mandates that "[a]n unsecured creditor ... *must* file a proof of claim ... for the claim ... to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr.P. 3002(a) (emphasis added).[13] Bankruptcy Rule 3003(c) addresses filing a proof of claim in a Chapter 11 case: "(2) Who must file. Any creditor ... whose claim ... is not scheduled or scheduled as disputed, contingent, or unliquidated *shall* file a proof of claim...." Fed. R. Bankr.P. 3003(c)(2) (emphasis added).[14]

The definition of "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the [Petition Date]...." 11 U.S.C. § 101(10)(A). The Claimants are entities whose claims arose against the Debtors prepetition because they delivered goods to the Debtors within the 20 days prior to the Petition Date for which they were not paid. Accordingly, the Claimants are "creditors" within the meaning of the Bankruptcy Code. Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that "creditors" must file a proof of claim to receive a distribution. Therefore, Claimants, as prepetition "creditors", must file their § 503(b)(9) claim under § 501(a). Neither the Federal Rules of Bankruptcy Procedure nor the Bankruptcy Code provide § 503(b)(9) Claimants an exception to this rule. In fact, each Claimant in this case did file a proof of claim under § 501(a). If a "creditor" wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501, second, have the claim allowed under § 502, and then, third, request administrative expense priority under § 503(a).

The Bankruptcy Court of the Eastern District of Michigan is one of the few courts that has specifically addressed the application of § 502(d) to § 503(b)(9) claims. *See In re Plastech Engineered Products Inc.,* 394 B.R. 147 (Bankr. E.D.Mich.2008). The *Plastech* court held that § 502(d) could not apply to

---

**12.** It is also worth noting that the *Ames* court specifically did not address the application of 502(d) to 503(b)(9) claims. *See Ames,* 582 F.3d at 424, n. 2 ("Neither party has suggested that section 503(b)(9) has any *relevance* to this appeal, and we do not specifically address its interaction with section 502(d)."). Further, the *Ames* court paid special attention to the postpetition nature of administrative expenses in holding 502(d) inapplicable. *Id.* at 431.

**13.** None of the exceptions provided in Rules 1019(3), 3003, 3004, and 3005 of the Federal Rules of Bankruptcy Procedure are applicable to the Claimants.

**14.** The Claimants' Claims in this case were either not scheduled or were scheduled as disputed, contingent or unliquidated.

§ 503(b)(9) claims because there was nothing in the Bankruptcy Code that made § 503(b)(9) claims a "special class," that would distinguish them from other § 503(b) claims. *Id.* at 163–64. The *Plastech* court, though, ignored the fact that nothing in the Bankruptcy Code makes §§ 501, 502 and 503 mutually exclusive. A creditor may be required to seek allowance of its claim under both §§ 502 and 503. This is, in fact, what the Federal Rules of Bankruptcy Procedure require in cases of § 503(b)(9) claims.

Both *Durham* and *Ames* make clear that § 502(d) may only be used to disallow claims filed by creditors under § 501(a). Although Claimants may be entitled to administrative expense status under § 503(b)(9), they are also creditors within the meaning of § 101(10)(A) and, as such, were required to file a proof of claim under § 501(a) in accordance with Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure. Therefore, consistent with *Durham* and *Ames*, § 502(d) may be applied to disallow the Claimants' Claims until the Claimants have paid into the estate any Preferential Transfers for which they may be held liable.

The goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the Claimants' Claims. Section 547(c)(4) provides a creditor with a "new value" defense to a claim that the creditor received an avoidable Preferential Transfer. 11 U.S.C. § 547(c)(4). This defense allows a creditor "to offset preference payments through the extension of new value to the debtor so long as the debtor does not make an *otherwise unavoidable transfer* on account of the new value." *In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir.2005). The definition of "new value" includes "money or money's worth in goods...." 11 U.S.C. § 547(a)(2). It is very likely, therefore, that in many instances, a Claimant will be both seeking an administrative expense payment for goods delivered in the 20 days prior to the Petition Date under § 503(b)(9) and using the delivery of those same goods as a basis for the new value defense. If the Claimant succeeds in both instances, then the Claimant will receive full payment on the § 503(b)(9) claim and the estate will be unable to get back the value of any Preferential Transfer that was made. This would allow the Claimant to receive a more favorable distribution to the detriment of other claimants in the case. Temporarily disallowing the Claims and holding them in abeyance until the preference litigation takes place would allow this Court to adjudicate these issues together and ensure that Claimants do not receive windfalls to the detriment of other creditors.

**Conclusion**

For the above reasons, the Court concludes that § 502(d) may be used to temporarily disallow § 503(b)(9) claims. As the Fourth Circuit held in *Durham*, § 502(d) may be used to bar claims filed under § 501. Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that all creditors must file proofs of claim pursuant to § 501(a). By definition, § 503(b)(9) claims arise within the 20 days prior to the Petition Date. This means that Claimants, as holders of § 503(b)(9) claims, are creditors as defined in § 101(10)(A). As creditors, Claimants must file a proof of claim under § 501(a). Therefore, § 502(d) may be used to temporarily disallow the Claims filed under § 501(a) up to the amount of the alleged Preferential Transfers.

A separate order shall be issued.

### *SUPPLEMENTAL MEMORANDUM OPINION*

Before the Court is the Motion of Apex Digital, Inc. and THQ, Inc. for Reconsider-

ation of Court's Order on Debtors' Fifty-first and Fifty-second Omnibus Objections (the "Motion"), the Debtors' objection to the Motion, and the Movants' reply thereto. Apex Digital, Inc. and THQ, Inc. (the "Movants") ask the Court to reconsider its Order and Memorandum Opinion dated January 6, 2010 (the "Memorandum Opinion"), in which the Court held that the Debtors may use 11 U.S.C. § 502(d) to temporarily disallow certain § 503(b)(9)[1] claims filed by a number of their creditors (the "Claimants").[2]

Movants assert that in rendering its Memorandum Opinion, the Court failed to consider their late filed supplemental response (the "Supplemental Response").[3] In light of the arguments set forth in the Supplemental Response, Movants request that the Court reconsider its January 6, 2010 ruling (the Court's "Prior Ruling") in accordance with Fed.R.Civ.P. 59 as made applicable herein by Fed. R. Bankr.P. 9023.[4] Movants urge the Court to reverse its Prior Ruling and overrule the Debtors' Fifty–First and Fifty–Second Omnibus Objections to Certain 503(b)(9) Claims.

The Fourth Circuit Court of Appeals (the "Fourth Circuit") recognizes three grounds for reconsideration under Fed.R.Civ.P. 59: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993); *see also Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir.2006). Nothing in the Motion suggests that there has been any intervening change in controlling law, any new evidence for which to account, or any manifest injustice to prevent. Rather, the Movants argue that the Court made a clear error of law in holding that § 502(d) may be used to temporarily disallow a claim asserted under § 503(b)(9). After review of the arguments presented in the Supplemental Response, the Motion, the Debtors' objection to the Motion, and the Movants' reply, many of which were already analyzed in the Memorandum Opinion, the Court concludes that no clear error of law was made in connection with its Prior Ruling.[5] Accordingly, Movants' Mo-

---

1. Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

2. Various other Claimants have joined in the Motion. *See* Joinder of Paramount Home Entertainment Inc. to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty–First and Fifty–Second Omnibus Objections [Docket No. 6323]; PNY Technologies, Inc.'s Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty–First and Fifty–Second Omnibus Objections [Docket No. 6322]; Olympus Corporation and Olympus Imaging America Inc.'s Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty–First and Fifty–Second Omnibus Objections [Docket No. 6349]; Onkyo USA Corporation's Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Recon-

sideration of Court's Order on Debtors' Fifty–First and Fifty–Second Omnibus Objection [Docket No. 6351]; Joinder of Toshiba America Consumer Products, L.L.C. to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty–First and Fifty–Second Omnibus Objections [Docket No. 6370].

3. The Supplemental Response [Docket No. 5666] was filed, without leave of court, on November 13, 2009, the day after the hearing on the Debtors' Fifty–First and Fifty–Second Omnibus Objections to Certain § 503(b)(9) Claims.

4. The Federal Rules of Bankruptcy Procedure are hereinafter referred to as the "Bankruptcy Rule(s)."

5. Failure to review the Supplement Response does not constitute a clear error of law, nor is it necessary to prevent manifest injustice. *See*

tion will be denied. This Supplemental Memorandum Opinion sets forth the Court's findings and conclusions in support of its denial of the Motion and supplements the Court's findings of fact and conclusions of law set forth in the Memorandum Opinion all in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[6] As no party has raised any new facts, the facts and procedural history as set out in the Memorandum Opinion are incorporated by reference into this Supplemental Memorandum Opinion.[7]

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Court's Prior Ruling

The question initially put before the Court was whether the Debtors could use § 502(d) to temporarily disallow § 503(b)(9) administrative expense claims.[8] The Court began its analysis of this issue with § 502(d) which "provides, in pertinent part, that 'the court shall disallow any claim of any entity from which property is recoverable under section ... 550, unless such entity ... has paid the amount ... for which such entity or transferee is liable.'" *Durham v. SMI Industries,* 882 F.2d 881, 882–83 (4th Cir.1989). Debtors contend that the Movants are transferees of Preferential Transfers avoidable under § 547 of the Bankruptcy Code. The Fourth Circuit explained in *Durham* that the term "claim" as used in § 502(d) is not to be construed expansively in accordance with the definition supplied in § 101(5)(A) of

*Motorists Mut. Ins. Co. v. Teel's Restaurant Inc.,* 2009 WL 5065223, *1 (N.D.Ind. Dec.23, 2009) (holding that the court's failure to consider a reply brief in support of a motion for summary judgment before issuing its ruling was not manifest error of law such that motion for reconsideration should be granted); *Ogbevoen v. Aramark Campus, Inc.,* 2006 WL 1788430, *1 (S.D.Tex. June 20, 2006) (holding that the court did not err in failing to consider reply in support of motion for summary judgment when reply was filed after deadline established by the court); *Cotracom Commodity Trading Co.v. Seaboard Corp.,* 193 F.R.D. 696, 699 (D.Kan.2000) ("That the Court failed to consider the reply brief thus provides no basis to reconsider the ruling concerning the duty to confer."). The Court had no obligation to review the Supplemental Response. *See Colodney v. Sebelius,* 2009 WL 4884501, *1 n. 1 (D.Md. Dec.9, 2009) (noting that the court has discretion to disregard untimely filed reply to motion for summary judgment). Nevertheless, the Court has given due consideration to the arguments set forth in the Supplemental Response, the Motion, and Movants' reply as detailed in this Supplemental Memorandum Opinion. *See In re E.M. Williams & Sons, Inc.,* 2009 WL 2211727, *1 (Bankr.E.D.Va.

2009) (addressing a new argument advanced by the Plaintiff in a motion to reconsider, even though the Plaintiff raised arguments that could have been raised prior to the issuance of the Court's decision and the Plaintiff did not identify any new evidence that was not previously available to it nor cite any intervening change in controlling law).

**6.** Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr.P. 7052.

**7.** The only change in facts since the entry of the Memorandum Opinion on January 6, 2009 is that the Confirmation hearing is now scheduled for March 8, 2010, instead of January 28, 2010.

**8.** Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

the Bankruptcy Code;[9] but rather, the term "claim" as used in § 502(d) refers only to claims for which a proof has been filed under § 501(a). *Id.* As the vast majority of administrative expense claims arise postpetition, § 501(a) is inapplicable to them, and § 502(d) cannot be used to bar those types of administrative expense claims.

In its Memorandum Opinion, the Court concluded that a claimant asserting a § 503(b)(9) administrative expense claim must file a proof of claim under § 501 in order to have such claim allowed as an administrative expense under § 503(b)(9). Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure require all creditors to file proofs of claim pursuant to § 501(a). By definition, § 503(b)(9) administrative expense claims arise within the 20 days prior to the Petition Date. This means that the holders of § 503(b)(9) administrative expense claims are creditors as defined in § 101(10)(A) of the Bankruptcy Code. As creditors, the holders of § 503(b)(9) administrative expense claims (unlike the majority of entities holding other § 503(b) administrative expense claims that arise postpetition) must file a proof of claim under § 501(a) of the Bankruptcy Code. In accordance with the Fourth Circuit's holding in *Durham* that § 502(d) may be used to bar claims filed under § 501, the Court concluded in its Memorandum Opinion that § 502(d) may be used to temporarily disallow § 503(b)(9) Claims

filed under § 501(a) up to the amount of the alleged Preferential Transfers.

### Discussion

■ Movants argue in their Motion that the Court's conclusion that § 503(b)(9) Claimants must file proofs of claim pursuant to Bankruptcy Rule 3002 is "unfounded." Yet, Movants do not take issue with the Court's observation that the plain language of Bankruptcy Rule 3002 requires that "[a]n unsecured *creditor* . . . *must* file a proof of claim . . . for the claim . . . to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr.P. 3002(a) (emphasis added). None of the exceptions set forth in Bankruptcy Rules 1019(3), 3003, 3004, and 3005 are applicable here. Quite to the contrary, Bankruptcy Rule 3003(c), which addresses specifically the need to file a proof of claim in a Chapter 11 case, provides that "[a]ny creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated *shall* file a proof of claim . . . ." Fed. R. Bankr.P. 3003(c)(2) (emphasis added).[10] As explained in the Memorandum Opinion, there is no escaping the fact that the § 503(b)(9) Claimants are unsecured creditors as defined in § 101(10)(A).[11] Neither Movant suggests that it is not a "creditor" within the meaning of that section.

■ Rather, Movants argue that, if Bankruptcy Rule 3002 is read to apply to § 503(b)(9) administrative expense claims as the Court maintains, then the Bank-

---

**9.** "The term 'claim' means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

**10.** Movants' administrative expense claims were either unscheduled or scheduled as disputed, contingent or unliquidated; and, therefore, Movants were required by the Bankrupt-

cy Rules to file proofs of their claims, which, in fact, they did.

**11.** "The term 'creditor' means—(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." 11 U.S.C. § 101(10).

ruptcy Rule would directly conflict with § 503(a) of the Bankruptcy Code. Movants point out that "[a]ny conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064, 1066 (9th Cir.1994). The Court agrees with this abstract principle of law—conflicts between the Bankruptcy Code and the Bankruptcy Rules must be resolved in favor of the Code. But in this instance, there is no such conflict. Applying Bankruptcy Rule 3002 to § 503(b)(9) administrative expense claims does not "abridge, enlarge, or modify any substantive right" in the Bankruptcy Code. *See* 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right.").

Bankruptcy Rules 3002 and 3003(c) merely set forth the practice and procedure for filing proofs of claim under § 501(a) in chapter 11 cases. Section 501(a) states that "a creditor ... may file a proof of claim." As each § 503(b)(9) Claimant is very clearly "a creditor" within the meaning of the Code, § 501(a) is applicable to their claims. Nothing in the language of §§ 501, 502, or 503 of the Bankruptcy Code suggests that filing a proof of claim by a creditor under § 501 becomes unnecessary when the creditor also seeks to have the claim paid as an administrative expense under § 503(b)(9) and accorded priority status under § 507(a)(2). Section 503(a) states that an "entity may timely file a request for payment of an administrative expense." Requiring an entity that is also a creditor to file a proof of claim under § 501(a) in no way conflicts with the requirement that the entity may also request administrative expense status for that claim under § 503(a).

There is no language in either the Code or the Bankruptcy Rules that exempts creditors with § 503(b)(9) administrative expense claims from the procedures laid out in the Bankruptcy Rules for filing proofs of claim. Further, § 503(b)(9) Claimants are not being forced to navigate a "three-step gauntlet" as suggested by the Movants. A § 503(b)(9) claimant can file a single proof of claim using Official Form 10 that satisfies the requirements of both § 501(a) and § 503(a). That single proof of claim form would first establish that a claim by the creditor exists and then request that the claim be paid as an administrative expense. Under § 502(a), any claim filed under § 501 is "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). If no objection is filed to the claim, then, "[a]fter notice and a hearing," the creditor's request for payment of the claim as an administrative expense "shall be allowed"— in effect granting that claim an administrative priority under § 507(a)(2). 11 U.S.C. § 503. This procedure does not impose an excessive burden on § 503(b)(9) Claimants. And should such a claimant fail to establish that it has a valid administrative expense claim under § 503(b)(9)[12] (perhaps because the "goods" were not "sold to the debtor in the ordinary course of such debtor's business," or because the "goods" allegedly "sold to the debtor" failed to meet the definition of "goods" under the Code, or because the "goods" were "sold to the debtor" outside the statutory timeframe), this procedure ensures that only the administrative priority status of the claim

---

12. *See In re Merry–Go–Round Enterprises v. Simon DeBartolo Group,* 180 F.3d 149, 156–157 (4th Cir.1999) (holding that the claimant has the burden of establishing entitlement to payment of an administrative expense under § 503).

would be disallowed and not the underlying claim itself.

In their Supplemental Response, Movants rely heavily on two bankruptcy treatises in contending that this Court committed clear legal error. Movants first cite to Collier on Bankruptcy for the proposition that "[t]he requirement that a proof of claim be filed extends to unsecured creditors claiming priorities but does not extend to costs of administration." 9 *Collier on Bankruptcy*, ¶ 3002.01 at 3002–2 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.). As a treatise, Collier on Bankruptcy is not binding authority on this Court.[13] In the cited instance, there is no indication that the editors took into account the addition of § 503(b)(9) to the Bankruptcy Code in 2005. The footnote in support of the quoted statement from the treatise bears this out. It references a 1985 case from the Bankruptcy Court in the District of Oregon that is no longer good authority for at least one point of law and that deals with the payment of attorney fees for a debtor in possession. Such an entity is not a "creditor" as defined by the Bankruptcy Code and would not be required by Bankruptcy Rule 3002 to file a proof of claim for this kind of administrative expense claim. The Court does not find the referenced passage from Collier on Bankruptcy to be helpful in the context of § 503(b)(9) claims.

Movants cite no controlling authority to support their argument that Bankruptcy Rule 3002 does not apply to creditors with § 503(b)(9) claims. Instead, the Movants rely on yet another treatise that states: § 503 is captioned 'allowance of administrative expenses' [which] *appears to suggest* that § 503 is a separate allowance section, apart from § 502, devoted exclusively to administrative expenses. *If so*, then § 502 would not apply to the allowance of administrative expenses.

2 *Norton Bankruptcy Law and Practice 2d* ¶ 42.14 at 42–76 to 42–77 (emphasis added). As the emphasized language indicates, the editors of the treatise express some uncertainty as to the application and interplay of §§ 502 and 503. But more importantly, this is the same argument that was presented by a number of Claimants in their briefs and at the hearing on November 12, 2009, which the Court has already rejected in holding that §§ 501 and 503 are not mutually exclusive in cases of § 503(b)(9) Claims. The Court is not persuaded that the quoted passage from this treatise demonstrates that the Court made a clear error of law in holding that § 503(b)(9) Claimants must file proofs of claim under § 501(a) and request administrative expenses status under § 503(a) in order to be allowed their § 503(b)(9) Claims.

Indeed, there are any number of reasons why Congress would treat § 503(b)(9) claims differently from other administrative expense claims. As the Second Circuit Court of Appeals noted, "the Bankruptcy Code establishes a clear division between an entity in its pre– and post-petition states." *In re Ames*, 582 F.3d 422, 431 (2d Cir.2009). Most administrative expenses arise postpetition and cannot be readily calculated at the petition date because they have not yet been incurred. Administrative expense claims for the compensation of professionals under § 503(b)(2), for example, are incurred postpetition, on an ongoing basis, throughout the bankruptcy case. The procedure for filing proofs of claim under Bankruptcy

---

13. The Court would note, however, that it has often cited to the treatise and does find it to be a scholarly work and generally persuasive.

Rules 3002 and 3003 is inappropriate for such administrative expense claims. For this reason, § 501(a) and Bankruptcy Rules 3002 and 3003 only require "creditors" to file proofs of claim. Section 503(b)(9) claims, unlike most other administrative expenses, are prepetition claims that can be calculated as of the petition date. They arise, by definition, prepetition. Therefore, there is no practical reason why the procedures laid out in Bankruptcy Rules 3002 and 3003 should not apply to § 503(b)(9) claims. The Official Proof of Claim Form bears out this distinction between prepetition § 503(b)(9) administrative expense claims and other types of postpetition administrative expense claims where it states that "[t]his form should not be used to make a claim for an administrative expense *arising after the commencement of the case.*" Official Form 10 (emphasis added).

The policy consideration most often advanced for not allowing § 502(d) to be used to bar § 503(b) administrative expense claims is not applicable in the § 503(b)(9) context, lending further support for the application of the Bankruptcy Rules as written. It is generally understood that "the Bankruptcy Code gives a higher priority to requests for administrative expenses than to prepetition claims in order to encourage third parties to supply goods and services on credit to the *estate* ... '[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend *post-petition*

*credit* to a chapter 11 debtor.' " *Id.* (quoting *In re Lids*, 260 B.R. 680, 684 (Bankr. D.Del.2001)) (emphasis added). The payment for which § 503(b)(9) provides an administrative priority is for goods that were sold to the debtor within the 20–day period preceding the petition date. No bankruptcy estate was in existence (or even contemplated) when these goods were sold. Section 503(b)(9) does not encourage the extension of postpetition credit. Section 503(b)(9) claims are by definition claims that arise for the prepetition supply of goods in the ordinary course of the debtor's business. Although trade vendors may have an idea that a business is troubled, they generally do not know if or when a debtor might file a bankruptcy petition. In a prepetition world, it is assumed that creditors take whatever steps are lawfully necessary and appropriate to get their claims preferred and thus paid. It is doubtful that § 503(b)(9) has any significant effect on whether vendors choose to extend credit prepetition.[14]

As the Court explained in its Memorandum Opinion, the goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the § 503(b)(9) Claimants' administrative expense claims.[15] The Court expressed concern in its Memorandum Opinion that overruling the Debtors' objections might prejudice the bankruptcy estates by allowing § 503(b)(9) Claimants both to receive payment on their asserted administrative claims for the delivery of

---

**14.** There was certainly no evidence presented to the Court in these bankruptcy cases that trade creditors extended any significant postpetition unsecured credit to the Debtors even in light of the postpetition DIP financing facility approved by the Court that allowed the Debtors to pay for the continued delivery of goods by vendors. Rather, it appeared that the existence of the § 503(b)(9) administrative expense claims had a chilling effect on the

part of the holders of such claims to extend postpetition credit.

**15.** *See, e.g., Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 865 (4th Cir.1994) ("The presumption in bankruptcy cases is that the debtor's limited resources [should] be equally distributed among the creditors. Thus, statutory priorities must be narrowly construed.").

goods and to use the provision of those same goods as the basis of a new value defense under 11 U.S.C. § 547(c)(4). While Movants appear to concede that the Court has identified a relevant point of concern, they argue that it is of no moment because they are, in fact, entitled to this type of double recovery on their claims.[16] If the Movants are correct in this regard, then the Claimants not only will be paid back in full for any goods delivered to the Debtors in the 20 days prior to the petition date but also will be able to use the delivery of those same goods as a "new value" credit to offset against their preference exposure. While these Claimants would effectively receive payment for the delivery of their goods twice, other § 503(b)(9) Claimants who did not receive any preferential payments would only receive one payment for their goods and general unsecured creditors would receive no benefit from the preference actions. Not surprisingly, the Debtors take issue with Movants' espoused position. There is no controlling case law in this jurisdiction on the issue of whether creditors may assert a claim under § 503(b)(9) for goods sold to the debtor and use those same goods as the basis for asserting a new value defense under § 547(c)(4). The Court expressed its concern over this issue in its Memorandum Opinion because this issue is not ripe for adjudication at this time. However, a ruling against the Debtors at this point may very well preclude the estates from raising the issue when it does arise in the proper context. Given the strong likelihood of this issue coming up in these cases as the preference litigation progresses, the Court agrees with the Debtors that the best approach is to temporarily disallow the Claims and hold them in abeyance until the preference litigation takes place so that the Court can adjudicate these issues together and ensure that Claimants do not receive windfalls to which they may not be entitled to the detriment of other creditors.

Movants also argue that the Court has previously ruled in this case that a § 503(b)(9) Claimant need only file a motion for allowance of administrative expense, not a proof of claim, to meet its procedural burden. The Movants cite the Bar Date Order[17] entered on November 12, 2008, which states that "[a]ll persons or entities holding a Section 503(b)(9) Claim against the Debtors are required to file a Section 503(b)(9) Claim Request or, alternatively, a motion seeking payment of 503(b)(9) claim ... no later than the Section 503(b)(9) Bar Date." The Court had no intention for the Bar Date Order to constitute a substantive ruling on the issue of whether, as a matter of Bankruptcy law, a § 503(b)(9) Claimant was supposed to file a proof of claim. Rather, the Bar Date Order was procedural in nature. It was intended to forestall objections on account of technical deficiencies pertaining to the filing of § 503(b)(9) Claims by laying out simplified alternative procedures for satis-

---

16. Movants argue that neither § 503(b)(9) nor § 547(c)(4) states that the provisions are mutually exclusive. Citing *Commissary Operations v. Dot Foods, Inc. (In re Commissary Operations, Inc.)*, 421 B.R. 873, 879 (M.D.Tenn.2010), Movants argue that the plain language of the Code permits a § 503(b)(9) Claimant both to seek an administrative expense claim and to assert a new value defense all on account of the single transaction.

17. Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 [Docket No. 107].

fying the filing requirements for this particular case. Indeed, had any Claimant filed only a motion seeking payment of its § 503(b)(9) claim, the Court would have treated the motion as an informal proof of claim under § 501.[18] In point of fact, this did not occur. Each of the Movants did file a proof of claim form, most likely because they wanted to preserve their underlying unsecured claim to the extent that their request for administrative priority status was denied.

## Conclusion

 "Reconsideration may be appropriate where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issue presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Puller v. Unisource Worldwide, Inc.*, No. 3:08–CV–813, 2009 WL 903303, at *1-2, 2009 U.S. Dist. LEXIS 27306, at *3-5 (E.D.Va. Mar. 31, 2009) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). And, "a party should not use a 59(e) motion simply 'to ask the Court to rethink what the Court had already thought through.'" *Id.; see also Cureton v. Cianbro Corp.*, No. JFM–06–2303, 2007 U.S. Dist. LEXIS 7388, 2007 WL 397025, at *1 (D.Md. Jan. 30, 2007) (holding that reconsideration is not permitted when parties are attempting to "raise arguments which could have been raised prior to the issuance of judgment"); *see also In re E.M. Williams & Sons, Inc.*, 2009 WL 2211727, *1 (Bankr.E.D.Va.2009) (noting that reconsideration may be appropriate where the court has made an error not of reasoning but of apprehension, but that

such circumstances are rare). The Movants here are asking the Court to reconsider arguments that were made during the hearing and are suggesting that the Court erred in its reasoning rather than in its apprehension.

For these reasons, the Movants have not met their burden of establishing a clear error of law. The Court will not overturn its Prior Ruling that entities seeking to assert administrative claims under § 503(b)(9) are creditors who must file proofs of claims under § 501(a) and, therefore, that § 502(d) may be used to temporarily disallow claims asserted under § 503(b)(9).

Accordingly, the Motion for Reconsideration will be denied. A separate order shall issue.

---

**18.** Actions by a claimant which do not amount to a formal proof of claim may constitute an informal proof of claim. *Fyne v. Atlas Supply Co. (In re Fyne)*, 245 F.2d 107, 107 (4th Cir.1957). If a creditor has "taken 'some affirmative action to constitute sufficient notice that he has a claim against the estate,'" then its claim should be allowed. *In re Judy Wood Pub. Corp.* 289 B.R. 319, 322 (Bankr. E.D.Va.2002) (quoting *Hardgrave v. La Rock (In re Hardgrave)*, No. 94–1832, 1995 WL 371462, 1995 U.S.App. LEXIS 15506 (4th Cir. June 21, 1995)).